William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Jeremiah D. Graham, Esq. (SBN: 313206)
JeremiahDGraham@gmail.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018
Facsímile: (310) 765-6328

Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RILEY'S AMERICAN HERITAGE FARMS**, a California corporation; **JAMES PATRICK RILEY**, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>**CRYSTAL MACHOTT**;<br>**LAYLA ABOU-TALEB**;<br>**ARMOND AGHAKHANIAN**;<br>**ANNE ALLAIRE**;<br>**GABRIELA ARELLANES**;<br>**CUAUHTÉMOC AVILA**;<br>**JOSEPH AYALA**;<br>**DEREK BAHMANOU**;<br>**JERI BIBLES-VOGEL**;<br>**KRISTA CHAKMAK**;<br>**CARL J. COLES**;<br>**CHUCK COYNE**;<br>**GLENN CREIMAN**;<br>**XILONIN CRUZ-GONZALEZ**;<br>**STEVE FERGUSON**; | Case No.: 5:20-cv-1739<br><br>**VERIFIED COMPLAINT**<br><br>Violations of:<br><br>1. First Amendment (Free Speech)<br>2. First Amendment (Retaliation)<br>3. First Amendment (Conspiracy to Violate Civil Rights)<br>4. Fourteenth Amendment (Due Process)<br><br>**Demand For Jury Trial** |

Verified Complaint                                     5:20-cv-1739

**BARBARA FLORES**;
**STEVE FRINTNER**;
**MICHAEL J. GALLO**;
**ED GILILLAND**;
**ADRIAN GREER**;
**ROB HAMMOND**;
**HELEN M. HALL**;
**MARGARET HILL**;
**MATT HILL**;
**KELLY KENT**;
**DIANE KOACH**;
**STEVEN LEVIN**;
**SELENE LOCKERBIE**;
**LESLIE LOCKHART**;
**JOSEPH W. MARTINEZ**;
**SUMMER MCBRIDE**;
**TASHON MCKEITHAN**;
**ABIGAIL ROSALES MEDINA**;
**EDGAR MONTES**;
**NANCY G. O'KELLEY**;
**ARTURO ORTEGA**;
**LARRY L. REDINGER**;
**ROBERTA REYNOLDS**;
**GWENDOLYN RODGERS**;
**YOLANDA RODRIGUEZ-PEÑA**;
**ROSALES MEDINA**;
**CYNTHIA M. RUIZ**;
**CHARLENE TABET**;
**ROBERT P. TAYLOR**;
**DANNY TILLMAN**;
**KATHERINE THOROSSIAN**;
**Y. TONY TORNG**;
**MARITZA TRAVANTI**;
**HAROLD J. VOLLKOMMER**;
**DINA WALKER**;
**BRYAN WONG**;
**SCOTT WYATT**; and
**DOES 1 THROUGH 250**;

                    Defendants.

2

Verified Complaint                                        5:20-cv-1739

Plaintiffs Riley's American Heritage Farms, a California corporation doing business as "Colonial Chesterfield at Riley's Farm" and "Riley's Farm" and James Patrick Riley, an individual, by and through its undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, on their own behalf and as private attorneys general, and in support thereof allege the following:

**INTRODUCTION**

1. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of U. of Virginia*, 515 U.S. 819, 828 (1995). It is equally axiomatic that a public agency's policy that "penalizes the free exercise of constitutional liberties" (*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017)) is unconstitutional and that "conditions upon public benefits cannot be sustained if they so operate, whatever their purpose, as to inhibit or deter the exercise of First Amendment freedoms." *Sherbert v. Verner*, 374 U.S. 398, 405 (1963). The government "'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Board of Cty. Com'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

2. This lawsuit presents an as-applied challenge to the policy enacted against Riley's American Heritage Farm solely on the basis of the content and/or viewpoints expressed by James Patrick Riley on his personal social media accounts. As such, it seeks to vindicate fundamental constitutional rights.

3. This lawsuit is a civil rights action brought pursuant to the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 &

Verified Complaint                                                     5:20-cv-1739

1985 to recover damages against the defendants named herein for violation of Plaintiffs' right to freedom of speech.

## JURISDICTION AND VENUE

4. This action arises under the First and Fourteenth Amendments to the United States Constitution and is authorized pursuant to 42 U.S.C. § 1983 in relation to Defendants' deprivation of the Plaintiffs' constitutional rights. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 & 1343.

5. Venue is proper under 28 U.S.C. § 1391(b). Each and all of the acts alleged herein were done by Defendants within Los Angeles County, Riverside County and San Bernardino County, California, and all Defendants reside or have their principal place of business located within Los Angeles County, Riverside County and San Bernardino County, California.

6. This Court is authorized to grant a Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the injunctive relief requested by Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure; the requested injunctive relief under 28 U.S.C. § 1343(3); the requested damages under 28 U.S.C. § 1343(3); and attorneys' fees and costs under 42 U.S.C. § 1988.

## PLAINTIFFS

7. Plaintiff Riley's Farm ("Riley's Farm" or "the Farm") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Oak Glen, San Bernardino County, California.

8. Plaintiff James Patrick Riley ("Riley") is, and at all times relevant hereto was, a resident of Oak Glen, San Bernardino County, California.

/ / /

/ / /

FREEDOM X 11500 OLYMPIC BLVD, SUITE 400 LOS ANGELES, CA 90064

4

Verified Complaint                                        5:20-cv-1739

## DEFENDANTS

9. The defendants named herein (collectively, "Defendants") are categorized according to the school districts where they are employed (the "Districts"). The Districts are organized alphabetically.

**I.    Azusa Unified School District**

10. Defendant Arturo Ortega ("Ortega") is, and at all times relevant hereto was, the Superintendent of the Azusa Unified School District, and a resident of the County of Los Angeles, California.

11. On information and belief, Defendant Ortega, acting under color of state law, was responsible for adopting, implementing, and enforcing school district policies, practices, procedures, and/or customs, including the challenged policy, practice, procedure, and/or custom set forth in this Complaint

12. Defendant Jeri Bibles-Vogel ("Bibles-Vogel") is, and at all times relevant hereto was, the President of the Azusa Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

13. On information and belief, Defendant Bibles-Vogel, acting under color of state law, was responsible for adopting, implementing, and enforcing school district policies, practices, procedures, and/or customs, including the challenged policy, practice, procedure, and/or custom set forth in this Complaint.

14. Defendant Gabriela Arellanes is, and at all times relevant hereto was, the Vice President of the Azusa Unified School District's Board and a resident of the County of Los Angeles, California.

15. Defendant Adrian Greer is, and at all times relevant hereto was, the Clerk of the Azusa Unified School District's Board and a resident of the County of Los Angeles, California.

///

///

5

Verified Complaint                                                    5:20-cv-1739

16. Defendant Xilonin Cruz-Gonzalez is, and at all times relevant hereto was, a member of the Azusa Unified School District's Board and a resident of the County of Los Angeles, California.

17. Defendant Yolanda Rodriguez-Peña is, and at all times relevant hereto was, a member of the Azusa Unified School District's Board and a resident of the County of Los Angeles, California.

## II. Bonita Unified School District

18. Defendant Carl J. Coles is, and at all times relevant hereto was, the Superintendent of the Bonita Unified School District, and a resident of the County of Los Angeles, California

19. Defendant Glenn Creiman is, and at all times relevant hereto was, the President of the Bonita Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

20. Defendant Chuck Coyne is, and at all times relevant hereto was, the Vice President of the Bonita Unified School District's Board and a resident of the County of Los Angeles, California.

21. Defendant Derek Bahmanou is, and at all times relevant hereto was, the Clerk of the Bonita Unified School District's Board and a resident of the County of Los Angeles, California.

22. Defendant Diane Koach is and at all times relevant hereto was a member of the Bonita Unified School District's Board and a resident of the County of Los Angeles, California.

23. Defendant Krista Chakmak is and at all times relevant hereto was a member of the Bonita Unified School District's Board and a resident of the County of Los Angeles, California.

///

///

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

6

Verified Complaint                                                5:20-cv-1739

### III.   Burbank Unified School District

24.   Defendant Matt Hill is, and at all times relevant hereto was, the Superintendent of the Burbank Unified School District, and a resident of the County of Los Angeles, California.

25.   Defendant Armond Aghakhanian is, and at all times relevant hereto was, the President of the Burbank Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

26.   Defendant Steve Frintner is, and at all times relevant hereto was, the Vice President of the Burbank Unified School District's Board and a resident of the County of Los Angeles, California.

27.   Defendant Charlene Tabet is, and at all times relevant hereto was, the Clerk of the Burbank Unified School District's Board and a resident of the County of Los Angeles, California.

28.   Defendant Steve Ferguson is and at all times relevant hereto was a member of the Burbank Unified School District's Board and a resident of the County of Los Angeles, California.

29.   Defendant Roberta Reynolds is and at all times relevant hereto was a member of the Burbank Unified School District's Board and a resident of the County of Los Angeles, California.

### IV.   Culver City Unified School District

30.   Defendant Leslie Lockhart is, and at all times relevant hereto was, the Superintendent of the Culver City Unified School District, and a resident of the County of Los Angeles, California.

31.   Defendant Summer McBride is, and at all times relevant hereto was, the President of the Culver City Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

/ / /

7

Verified Complaint                                                          5:20-cv-1739

32. Defendant Tashon McKeithan is, and at all times relevant hereto was, the Vice President of the Culver City Unified School Board and a resident of the County of Los Angeles, California.

33. Defendant Anne Allaire is, and at all times relevant hereto was, the Clerk of the Culver City Unified School Board and a resident of the County of Los Angeles, California.

34. Defendant Steven Levin is and at all times relevant hereto was a member of the Culver City Unified School Board and a resident of the County of Los Angeles, California.

35. Defendant Kelly Kent is and at all times relevant hereto was a member of the Culver City Unified School Board and a resident of the County of Los Angeles, California.

## V. Monrovia Unified School District

36. Defendant Katherine Thorossian is, and at all times relevant hereto was, the Superintendent of the Monrovia Unified School District and a resident of the County of Los Angeles, California.

37. Defendant Rob Hammond is, and at all times relevant hereto was, the President of the Monrovia Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

38. Defendant Bryan Wong is, and at all times relevant hereto was, the Vice President of the Monrovia Unified School Board and a resident of the County of Los Angeles, California.

39. Defendant Maritza Travanti is, and at all times relevant hereto was, the Clerk of the Monrovia Unified School Board and a resident of the County of Los Angeles, California.

/ / /

/ / /

8

Verified Complaint
5:20-cv-1739

40. Defendant Selene Lockerbie is and at all times relevant hereto was a member of the Monrovia Unified School Board and a resident of the County of Los Angeles, California.

41. Defendant Ed Gililland is and at all times relevant hereto was a member of the Monrovia Unified School Board and a resident of the County of Los Angeles, California.

## VI. Norco Unified School District

42. Defendant Crystal MacHott ("MacHott"), is, and at all times relevant hereto was, a public school teacher employed by the Corona Norco Unified School District and a resident of the County of Riverside, California.

## VII. Rialto Unified School District

43. Defendant Cuauhtémoc Avila is, and at all times relevant hereto was, the Superintendent of the Rialto Unified School District and a resident of the County of San Bernardino, California.

44. Defendant Nancy G. O'Kelley is, and at all times relevant hereto was, the President of the Rialto Unified School District's governing Board of Education and a resident of the County of San Bernardino, California.

45. Defendant Dina Walker is, and at all times relevant hereto was, the Vice President of the Rialto Unified School District Board and a resident of the County of San Bernardino, California.

46. Defendant Joseph W. Martinez is, and at all times relevant hereto was, the Clerk of the Rialto Unified School District Board and a resident of the County of San Bernardino, California.

47. Defendant Joseph Ayala is and at all times relevant hereto was a member of the Rialto Unified School District Board and a resident of the County of San Bernardino, California.

/ / /

9

Verified Complaint                                                                 5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

48.    Defendant Edgar Montes is and at all times relevant hereto was a member of the B Rialto Unified School District Board, and a resident of the County of San Bernardino, California.

/ / /

## VIII.  San Bernardino City Unified School District

49.    Defendant Harold J. Vollkommer is, and at all times relevant hereto was, the Interim Superintendent of the San Bernardino City Unified School District, and a resident of the County of San Bernardino, California.

50.    Defendant Gwendolyn Rodgers is, and at all times relevant hereto was, the President of the San Bernardino City Unified School District's governing Board of Education and a resident of the County of San Bernardino, California.

51.    Defendant Scott Wyatt is, and at all times relevant hereto was, the Vice President of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

52.    Defendant Barbara Flores is and at all times relevant hereto was a member of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

53.    Defendant Michael J. Gallo is and at all times relevant hereto was a member of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

54.    Defendant Margaret Hill is and at all times relevant hereto was a member of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

55.    Defendant Danny Tillman is and at all times relevant hereto was a member of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

/ / /

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

10

Verified Complaint                                                 5:20-cv-1739

56. Defendant Abigail Rosales Medina is and at all times relevant hereto was a member of the San Bernardino City Unified School District Board and a resident of the County of San Bernardino, California.

**IX.    Walnut Valley Unified School District**

57. Defendant Robert P. Taylor is, and at all times relevant hereto was, the Superintendent of the Walnut Valley Unified School District, and a resident of the County of Los Angeles, California.

58. Defendant Larry L. Redinger is, and at all times relevant hereto was, the President of the Walnut Valley Unified School District's governing Board of Education and a resident of the County of Los Angeles, California.

59. Defendant Layla Abou-Taleb is, and at all times relevant hereto was, the Vice President of the Walnut Valley Unified School District Board and a resident of the County of Los Angeles, California.

60. Defendant Y. Tony Torng is, and at all times relevant hereto was, the Clerk of the Walnut Valley Unified School District Board and a resident of the County of Los Angeles, California.

61. Defendant Cynthia M. Ruiz is and at all times relevant hereto was a member of the Walnut Valley Unified School District Board and a resident of the County of Los Angeles, California.

62. Defendant Helen M. Hall is and at all times relevant hereto was a member of the Walnut Valley Unified School District Board and a resident of the County of Los Angeles, California.

63. On information and belief, Defendants, and each of them, acting under color of state law, was responsible for adopting, implementing, and enforcing school district policies, practices, procedures, and/or customs, including the challenged policy, practice, procedure, and/or custom set forth in this Complaint. Defendants, and each of them, are sued both individually for damages for violating Plaintiffs'

11

Verified Complaint                                          5:20-cv-1739

clearly established constitutional and statutory rights as set forth in this Complaint and their official capacity for the equitable relief sought.

64. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 250, and for that reason have sued them by their fictitious names. On information and belief, Plaintiffs allege that each of these fictitiously named Defendants are responsible in some manner for some or all of the acts alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of the fictitiously-named Defendants once ascertained.

65. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment, license, guaranty, indemnity, invitation, assignment and/or relationship and with the full knowledge, consent and approval of the remaining Defendants.

## GENERAL ALLEGATIONS
## X. RILEY'S FARM'S BUSINESS OPERATION

66. Riley's Farm operates an agritourism business, which it describes as a "living history farm," in the foothills of the San Bernardino Mountains, in the rural community of Oak Glen, San Bernardino County. Its varied business activities include seasonal "U-Pick" apple and other fruit picking, produce sales, pie, pastry, cider, jam and other food sales, historical and other novelty item sales, a seasonal pumpkin patch, a restaurant and tavern, dinner theater events, hosting of corporate, family and associational events, summer "day camp" activities, film and commercial location shooting, historically-themed activities such as tomahawk throwing, candle dipping and archery, and school field trips.

/ / /

12

Verified Complaint                                    5:20-cv-1739

67. Depending on the season, Riley's Farm employs between 28 and 163 full- and part-time workers of diverse backgrounds, with the latter high number being reached during the spring "high season" for school field trips. Riley's Farm and its management and staff often have close, long-lasting personal and professional relationships.

68. The category of school field trips accounts for approximately half of Riley's Farm's revenues, generating around $2,100,000 in gross revenue in a typical recent year out of total Farm revenues of approximately $4,200,000.

69. Riley's Farm has been hosting school field trips since 2001. The trips have proven highly popular, and until 2019, patronage had grown steadily to its current level.

70. Riley's Farm's field trip programs include immersive presentations focused on the American Revolution, the Civil War, American colonial farm life, the California Gold Rush, and the pioneer homesteading history of Oak Glen and the San Gorgonio Pass region.

71. Of these presentations, the American Revolution presentation is the most popular. A large area of the Riley's Farm premises is landscaped and themed as "Colonial Chesterfield," portraying a New Hampshire village of the 1770s. A post-and-beam colonial tavern, orchards, a village green, stone walls, a storehouse, and a pillory furnish an authentic period environment.

72. Students are divided into small groups (each typically accompanied by a teacher, aide or volunteer chaperone) and spend the day rotating among "stations" where "living historians" in period dress provide interactive presentations on different aspects of the history of the American Revolution and its time period. The exact number of stations on any given field trip will typically vary according to the time a school group has available.

/ / /

Verified Complaint                                          5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

73. A typical American Revolution field trip might include the following stations:

- Admiralty Court
- Stamp Act
- Drill
- Quartering Act
- Quill and Ink
- Etiquette
- Games

74. In the "Admiralty Court" station, to take one example, student volunteers are put on "trial" for smuggling, with the presentation, containing a healthy dose of comic relief, highlighting the unfairness of the widely despised British admiralty courts (where the same official effectively served as prosecutor, judge and jury) contrasted with the important rights under the present Constitution of trial by jury before an impartial tribunal.

75. In another popular station, living historians instruct students in 18th century military drill on the village green, learning the authentic "manual of arms" with sticks for muskets and enthusiastic shouts of "BOOM" for musket volleys. The students may receive a "soldier's ration" of authentically tough hardtack, cheese, and fruit. Toward the end of the day, the (now well-trained) small groups may join for a reenactment of a skirmish between "Minutemen" and "Redcoats."

76. After the skirmish, a presenter (in the character of Patrick Henry or another Revolutionary figure) will typically offer a closing speech, with the aim of summing up the lessons and larger meaning of the Revolutionary period. A true copy of a typical closing speech is attached hereto as Exhibit 2, and is excerpted as follows:

> [P]retty soon you get to go on those buses and cars to that wonderful sweet place called home – where there's food on the table, friends next door, and all the comforts of modern life. But I would like you to ponder

Verified Complaint                                                    5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

for just a moment, all the Americans throughout time, from Bunker Hill to Normandy and beyond…who never got that chance to go home…because they gave their lives…so that we may live in a nation where we can vote, we can be tried by a jury of our peers, where we can speak our minds without fear, we can bear arms, where we can worship as we choose. You live in *that* nation.

…Then I would hope and pray you remember, despite her faults, and she does have many, the country that was given to you. You still live in a very free nation. They say that liberty is a chain…

…and you are the next link in that chain.

77.    Riley's Farm works diligently to present an authentic historical experience in both the content of the presentations and the period detail of the costumes and implements and strives to avoid anachronism. The presentations are continuously evolving, with input from educators, formally trained historians, the historical reenactor community, and the public. Riley's Farm's staff and management are extremely careful – perhaps even more careful than many full-time educators – to avoid "editorializing," or inserting commentary on contemporary political or cultural issues into their presentations.

## XI.    RILEY POSTED HIS VIEWS ON MATTERS OF PUBLIC CONCERN ON HIS PERSONAL SOCIAL MEDIA ACCOUNTS

78.    Riley is one of the principal shareholders of the eponymous Riley's Farm.

79.    Riley's Farm maintains an Internet web site at rileysfarm.com, a Facebook page, and a Twitter account, @rileysfarm76.

80.    Riley has his own personal Facebook page and Twitter account, which he uses (the latter account is currently inactive) to keep in touch with a wide circle of family, friends and acquaintances and to post comments reflecting his thoughts and opinions on politics, religion, cultural trends and other matters of public concern ("Social Media Posts").

15

Verified Complaint                                                                      5:20-cv-1739

81.   Riley's political and social views lean conservative.

82.   All of Riley's personal views appear solely on his personal social media accounts.  None of them have appeared on Riley's Farm's accounts or website.  Riley has not referenced the Districts, Riley's Farm, school field trips, or anything with any connection to the Districts in his Social Media Posts. The Districts did not commission, pay for, endorse, express approval of, or otherwise associate itself with Riley's speech on these matters, expressed in the above social media posts. No reasonable reader of those posts could possibly interpret them as representing the views of the Districts or the Defendants.

83.   Plaintiffs are not policymakers, supervisors, official government spokespersons, public safety employees, primary or secondary school teachers, or any other category of person that courts have classified as "quintessentially public servants" potentially subject to heightened governmental restraints on speech that may reasonably be perceived as communicating a government agency's own views.

## XII.   RILEY'S SOCIAL MEDIA POSTS ATTRACTED THE ATTENTION OF A PERSON AVERSE TO HIS CONSERVATIVE VIEWS

84.   In or about August 2018, using the alias "Elizabeth Adams," Defendant Crystal MacHott ("MacHott"), a Corona Norco Unified School District public school teacher, posted on her Facebook account comments critical of Riley's conservative Social Media Posts.

85.   On information and belief, MacHott sent copies of Riley's Social Media Posts to various school officials, including officials employed with the Districts identified herein.

86.   On information and belief, MacHott's purpose in presenting Riley's Social Media Posts to the Districts was to encourage the Districts to boycott Riley's Farm by discontinuing their pattern and practice of sending field trips due to the

Verified Complaint                                                    5:20-cv-1739

conservative content and/or viewpoints expressed by Riley and to punish Riley and Riley's Farm on account of his conservative views.

87. MacHott's Facebook posts critical of Riley's Social Media Posts were shared more than 2,000 times.

## XIII. THE SCHOOL DISTRICTS BEGIN CANCELLING FIELD TRIPS TO RILEY'S FARM

88. To Plaintiffs' knowledge, the Districts have not issued or adopted formal or official written regulations or policies governing public commentary or social media use by independent contractors, or their owners, employees, or management, providing services to them.

89. The Districts have been regular patrons of Riley's Farm field trips since for approximately two decades.

90. Until September 2018, the Districts' patronage trended upward each year.

91. In or about September 2018, the Districts began notifying Plaintiffs that they were cancelling field trips already scheduled to tour Riley's Farm and/or were no longer planning to send students on field trips to Riley's Farm.

92. Plaintiffs are informed and believe and, on that basis, allege that the superintendents of each of the Districts sued herein were informed of, approved of, endorsed, and ratified the decisions to prohibit teachers from patronizing Riley's Farm for field trips.

93. In early September 2018, staff at Riley's Farm and Riley began noticing posts on Facebook calling for schools to cancel field trips to Riley's Farm because of Riley's Social Media Posts. Beginning on September 4, 2018, a slew of cancelled field trips were being requested by schools. It was evident to Riley that the cancellations were the result of a widening community backlash arising from the politically conservative commentary Riley had publicly aired through social media.

17

Verified Complaint                                           5:20-cv-1739

94.    As a result of the growing number of school cancellations, Riley retained legal counsel.

95.    On September 25, 2018, Plaintiffs, through counsel, caused a letter to be sent to the Claremont Unified School District ("Claremont USD"), its superintendent, and all of the members of its Board of Education, alerting them that retaliatory action had been taken against Riley's Farm based on Riley's expressed opinions, setting forth the legal authorities that demonstrate the illegality of this action, and demanding that the retaliatory action be remedied.

96.    On October 2, 2018, counsel for the Claremont USD replied to counsel's letter justifying Claremont USD's decision to withdraw its patronage of Riley's Farm based on the content of his Social Media Posts, arguing:

> Nothing in the First Amendment obligates the District to continue doing business with any organization that makes public statements which are inimical to the District's educational mission…. The District has … no obligation to expose children to an individual who engages in these crude and tasteless comments.

97.    Counsel for Claremont USD additionally stated:

> According to news reports, Mr. Riley's comments have resulted in widespread criticism by private individuals.

98.    This was the first direct evidence Plaintiffs had that CUSD, and possibly other Districts, were cancelling field trips in response to publicity generated by MacHott's objections to Riley's Social Media Posts.

99.    The District did not assert, nor could it truthfully assert, that any of the Social Media Posts – or any comments resembling them or addressing the same subjects – were ever expressed, or were likely to be expressed, during field trips at Riley's Farm.

100.    Students are not, in fact, exposed to "discrimination and harassment," "inappropriate sexist or racist attitudes," or "sexually explicit, indecent or lewd

18

Verified Complaint                                                5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

speech" on Riley's Farm field trips.  District schoolteachers have attended these field trips for nearly two decades, and (to Plaintiffs' knowledge) have never expressed a single complaint about any such matters.

101.   On or about October 12, 2018, Plaintiffs sued CUSD in the Central District (*Riley's American Heritage Farms, et al., v. Elsasser, et al.*, Case No. 5:18-cv-02185-JGB-SHK) ("CUSD Lawsuit") alleging that CUSD had unconstitutionally retaliated against them in violation of their civil rights pursuant to the First and Fourteenth Amendments and 42 U.S.C. § 1983 and conspired with other individuals and educational institutions for the purpose of boycotting Riley's Farm on account of Plaintiff Riley's Social Media Posts.

102.   Since the filing of that lawsuit, Plaintiffs have closely monitored field trip cancellations by schools operated within the Districts sued herein. Plaintiffs' records document direct and indirect evidence of cancellations resulting, on information and belief, from the conspiracy alleged herein. Direct evidence includes specific oral and written statements declaring the cancellations to be caused by Riley's Social Media Posts. Examples of indirect evidence include a steep decline from past years in a school district's bookings and revenue following community reactions to the Social Media Posts or a complete absence of bookings and revenue during the 2018-2019 school year period.

A.   **Azusa Unified School District**

103.   Azusa Unified School District ("Azusa USD") has continuously attended field trips at Riley's Farm since 2008.

104.   During the 2017-2018 school year, Azusa USD booked seven field trips to Riley's Farm, bringing 416 students along for those tours and generating $7,193.00 in revenue for Plaintiffs.

105.   The following school year showed a dramatic reduction in the number of field trips booked and revenue generated.

19

Verified Complaint                                                   5:20-cv-1739

106. For the 2018-2019 school year, Azusa USD booked ten field trips, with expected revenue totaling $11,192.50.

107. All of these field trips were subsequently cancelled.

108. On February 21, 2019, Douglas Ford of Paramount Elementary School Informed Plaintiffs by e-mail that Azusa USD had directed the cancellations on account of the Social Media Posts:

Regarding the field trips for May 17, 2019 for Paramount Elementary School:

I got a message from our district administration and school board that we are not allowed to attend any field trips to Riley Farm due to various social media posts by Mr. Riley. If I had my way, we would still attend, but my superiors have the ultimate say in the matter. I wanted to let you know asap so you could book other schools for that date. Please let me know if you have any questions or comments you want me to relay to my superiors. Thank you for all your help, I hope we can return at some point in the future since our school has had many wonderful experiences at Riley's Farm.

109. On March 19, 2019, Alexis Wolf-Diaz, a fifth-grade teacher at Victor Hodge Elementary School, e-mailed Plaintiffs the following message:

Hello, thank you again for all of your help. However, I don't believe we will be able to make it this year. There are quite a few things happening over here in our district that are out of my control. I appreciate your patience!

110. On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

111. On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the

20

Verified Complaint                                                        5:20-cv-1739

Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

**B.      Bonita Unified School District**

112. Bonita Unified School District ("Bonita USD") has continuously booked field trips at Riley's Farm since 2002.

113. During the 2017-2018 School Year, Bonita USD booked four field trips to Riley's Farm, bringing 379 students along for those tours, and generating $7,186.00 in revenue for Plaintiff.

114. In the 2018-2019 school year, Bonita USD did not book any tours.

115. On October 11, 2018, an unidentified caller, who, on information and belief, was a teacher named Nicole Becerra, left a voicemail for Plaintiffs cancelling a field trip reservation booked for March 15, 2019. The caller explained the reason for the cancellation was "the owner's racist comments."

116. On October 10, 2018, a caller who identified herself only as "Susan" from Gladstone Elementary, a school within Bonita USD, cancelled a May 30, 2019, reservation, stating in a voicemail that "[t]he district is not allowing us to go to Riley's Farm this year."

117. On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

118. On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

Verified Complaint                                                          5:20-cv-1739

## C.    Burbank Unified School District

119.   Since 2003, Burbank Unified School District ("Burbank USD") has scheduled 88 field trips, bringing 6,679 students along for those tours. Up until the 2018-2019 school year, it had cancelled just five field trip bookings.

120.   During the 2017-2018 school year, Burbank USD booked 9 field trips to Riley's Farm, bringing 562 students along for those tours, and generating $36,548 in revenue for Plaintiffs.

121.   Burbank had eight field trips booked in 2018-2019, all of which were cancelled.  During the 2018-2019 school year, Burbank USD booked zero tours, with zero students, resulting in a total loss of business for the Plaintiffs.

122.   On September 4, 2019, Dorothy Hernandez from George Washington Elementary, a school within Burbank USD, contacted Riley's Farm and stated the following to Plaintiffs' reservation clerk:

> I am not doing well. We are going to have to cancel our field trip. Unfortunately, with everything that happened and came about this weekend with the Twitter storm, and all of the very inappropriate comments that have come through Riley's Farm, it's just not something that we as a school or a school district can support, so we have to pull from our field trip….
>
> It is really disappointing.  The students really need to have this type of experience, but it's just not something that is going to be tolerated.
>
> [U]nfortunately, we've seen them all. People have screenshots. It was sent around to our district. it wasn't word of mouth, it was seen. Honestly, if it was just a political deal. It's just because of the nature of the comments and because we are a school. It's just not something we can support with our students.
>
> Our district is way too strict on things like that.

/ / /

/ / /

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

22

Verified Complaint                                              5:20-cv-1739

123. On September 7, 2018, Burbank USD circulated a letter to parents of fifth-grade students purporting to explain why it had discontinued field trips to Riley's Farm. The letter stated:

> As you are probably aware, our fifth grade students had an overnight field trip planned to go to Riley's Farm this school year. This past weekend, multiple conversations have occurred pertaining to a variety of social media posts made by the owner or Riley's Farm. Statements included numerous opinions which clearly do not align with Burbank Unified School District's Core Value Statement. Due to this newly discovered information, the elementary administrators of the schools which take a trip to the location along with district administration have decided to cancel the overnight trip to Riley's Farm.

124. On September 10, 2018, an unidentified teacher from John Muir Middle School, a school within Burbank USD, called Plaintiffs to cancel a reservation booked for that day. The teacher told Plaintiffs' employee:

> Trust me; it was not our choice. It's because of the tweets, and the District pulled it. We thought we were going to get past it, but apparently, they pulled it at one of our other schools first. Please don't stop sending us information.

125. On information and belief, a Facebook post from an individual affiliated with Burbank USD said:

> Riley's farm… where the preferred farm equipment is black people and white rights rule… My kids and I won't be back. The views expressed by the family here have me believing this is not a place of learning. Except maybe what NOT to do.

126. On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

127. On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies

Verified Complaint                                             5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

**D.    Culver City Unified School District**

128.   Culver City Unified School District ("Culver City USD") has booked field trips at Riley's Farm every year since 2003.

129.   During the 2017-2018 School Year, Culver City USD booked three field trips to Riley's Farm, bringing 334 students along for those tours and generating $7,296.00 in revenue for Plaintiffs.

130.   Things changed dramatically the following school year after the Social Media Posts was published.

131.   During the 2018-2019 school year, Culver City USD booked zero field trips, with zero students, resulting in a total loss of business for the Plaintiff.

132.   On October 6, 2018, Stephanie Manglinong, a Fifth Grade staff member of Farragut Elementary, writing from a Culver City USD e-mail address, cancelled a field trip scheduled for May 31, 2019 by Farragut Elementary.

133.   On October 24, 2019, Manglinong followed up with another e-mail explaining the reason for the cancellation, stating:

> The reason why we are canceling this field trip is because parents are aware of social media posts by the owner. Concerns were brought forth to our district administrators.

134.   On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

135.   On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies

24

Verified Complaint                                              5:20-cv-1739

established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

### E.   Monrovia Unified School District

136.   Between 2004 and 2019, Monrovia Unified School District ("Monrovia USD") had booked from one to six field trips to Riley's Farm each year.

137.   During the 2017-2018 school year, Monrovia USD booked four field trips to Riley's Farm, bringing 435 students along for those tours, and generating $9,413.00 in revenue for Plaintiffs.

138.   Things changed dramatically the following school year after the Commentary was published.

139.   During the 2018-2019 school year, Monrovia USD booked just one field trip, with 85 students, generating $1,802.00 in revenue and resulting in an 80% loss of business for Plaintiffs.

140.   On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

141.   On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

### F.   Rialto Unified School District

142.   Rialto Unified School District ("Rialto USD") has booked field trips at Riley's Farm every year since 2001.

/ / /

Verified Complaint

5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

143.   During the 2017-2018 school year, Rialto USD booked six field trips to Riley's Farm, bringing 641 students along for those tours and generating $9,530.00 in revenue for Plaintiffs.

144.   During the 2018-2019 School Year, Rialto USD booked zero tours, with zero students, resulting in a total loss of business for the Plaintiff.

145.   On September 28, 2018, Shawn Dauss, a second-grade teacher at Trapp Elementary, a school within the Rialto USD, called to cancel a field trip, advising Plaintiffs' employee:

> Our district has informed us that we cannot go (inaudible) field trip. Something somebody said. The superintendent said that no Rialto School District classes can go.

146.   On July 8, 2019, one school in the district, Werner Elementary, booked and attended a field trip.

147.   On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

148.   On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

**G.    San Bernardino City Unified School District**

149.   San Bernardino City Unified School District "San Bernardino CUSD") has booked field trips at Riley's Farm every year since 2001.

/ / /

/ / /

26

Verified Complaint                                                    5:20-cv-1739

150. During the 2017-2018 school year, San Bernardino CUSD booked 18 field trips to Riley's Farm, bringing 1,493 students for those tours and generating $23,083.00 in revenue.

151. During the 2018-2019 School Year, San Bernardino CUSD booked zero tours, with zero students, resulting in a total loss of business for the Plaintiffs.

152. On October 31, 2018, an administrative assistant named Mary Watson e-mailed the San Bernardino CUSD Management Team the following message on behalf of San Bernardino CUSD Assistant Superintendent for Education Services Kennon Mitchell:

> The District is suspending all study trips to Riley's Farm. There have been allegations of derogatory racial comments made on social media by the owner(s) of Riley's Farm. Riley's Farm is no longer on the approved study trip list. The District will honor the payment of existing contracts with Riley's Farm, but will discontinue sending students to Riley's Farm, effective November 1, 2018.

153. On November 1, 2018, Donna Carlson, Principal at Deer Canyon Elementary School, a school within San Bernardino CUSD, forwarded an e-mail to Riley's Farm sent to her by Rodolfo Maldonado, an employee of San Gogonio High School, operating within the San Bernardino CUSD. On information and belief, Maldonado referenced Plaintiffs' "derogatory comments":

> I was hoping you could shed some light on something for me. I know that Deer Canyon goes to Riley's Farm quite frequently, but I was wanting to know if ALSD was aware of the derogatory comments that were being made by the owner of Riley's Farm? I also wanted to know if that information would have any effect on future trips to Riley's Farm.

154. On November 2, 2018, Martha Eaton, a fifth-grade teacher at Bonnie Oehl Elementary School, a school located within the San Bernardino CUSD, opted out of a subscription to Plaintiffs' e-mails, stating: "Riley's Farm is no longer an approved vendor for SBCUSD."

27

Verified Complaint                                    5:20-cv-1739

155. On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

156. On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

### H. Walnut Valley Unified School District

157. The Walnut Valley Unified School District ("Walnut Valley USD") has a long history of field trip bookings to Riley's Farm stretching back to 1999.

158. During the 2017-2018 school year, Walnut Valley USD booked seven field trips to Riley's Farm, bringing 813 students along for those tours and generating $15,576.00 in revenue for Plaintiffs.

159. During the 2018-2019 school year, Walnut Valley USD booked zero tours, with zero students, resulting in a total loss of business for the Plaintiffs.

160. On November 19, 2019, Plaintiffs received a phone call from an individual at Vejar Elementary, a school operated within Walnut Valley USD, and calling to cancel a field trip, stated: "Our district is no longer approving for us to go on that field trip, so we had to switch."

161. On January 21, 2020, Plaintiffs received the following e-mail message from a teacher at Walnut Valley USD:

> I have donated but wanted to leave a personal note. I think you are getting screwed by the PC Police!!! Our district made us cancel our trips to you, much to the anger of the teachers. Just know that you have our support.

/ / /

Verified Complaint                                    5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

162.  On information and belief, the field trip cancellations resulting in lost business revenue arose directly from and were proximately related to the discriminatory acts and conspiracy alleged herein.

163.  On information and belief, the field trip cancellations resulting in lost business revenue were based on either the conduct of decisionmakers acting pursuant to a duty they understood to flow from their office or pursuant to policies established, endorsed, ratified or sanctioned by the Defendants employed by the Districts sued herein, all of whom, on information and belief, possess the power to perpetuate the discriminatory policies alleged herein.

## FIRST CLAIM FOR RELIEF

### Violation of the First Amendment – Free Speech
### (42 U.S.C. § 1983)

(Against All Defendants)

164.  Plaintiffs hereby incorporate by reference all above-stated paragraphs.

165.  The First Amendment to the United States Constitution prohibits abridgement of the freedom of speech, and the First Amendment is incorporated against the states by the Fourteenth Amendment. Persons violating the First Amendment under color of law are liable at law and in equity under 42 U.S.C. § 1983.

166.  The government " 'may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech' even if he has no entitlement to that benefit." *Board of Cty. Com'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

167.  Riley engaged in protected freedom of speech by publishing his opinions concerning matters of public interest on social media platforms.

/ / /

/ / /

29

Verified Complaint                                                    5:20-cv-1739

168. Defendants, acting under color of state law, deprived Plaintiffs of a public benefit, i.e., being allowed to provide educational services, thus infringing his constitutionally protected freedom of speech.

169. By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed content- and viewpoint-based restrictions on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

170. As a direct and proximate consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the First Amendment, Plaintiffs have suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

171. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and preliminary and permanent injunctive prospective relief invalidating and restraining enforcement of the restrictions imposed on Plaintiffs' freedom of speech. As to this claim for relief, Plaintiffs seek said equitable relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908) against all Defendants acting in their official capacities.

172. Additionally, Plaintiffs are entitled to their actual and nominal damages arising from Defendants' unconstitutional actions in their individual capacity while acting under color of state law, as well as reasonable costs of suit.

173. Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

///

///

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Verified Complaint                                          5:20-cv-1739

## SECOND CLAIM FOR RELIEF

### Violation of the First Amendment – Retaliation
### (42 U.S.C. § 1983)

(Against All Defendants)

174.   Plaintiffs hereby incorporate by reference all above-stated paragraphs.

175.   The First Amendment to the United States Constitution prohibits abridgement of the freedom of speech, and the First Amendment is incorporated against the states by the Fourteenth Amendment.  Persons violating the First Amendment under color of law are liable at law and in equity under 42 U.S.C. § 1983.

176.   Defendants are sued in their individual capacity for damages and in their official capacity for equitable relief.

177.   The government " 'may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech' even if he has no entitlement to that benefit." *Board of Cty. Com'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

178.   In providing the services Plaintiffs offer students on field trips to Riley's Farm, Plaintiffs provided no government service. Field trips to the Farm do not fulfill a municipal function or provide a necessary government service. Instead, the Farm provides discrete and discretionary educational experiences to students in the District. Thus, the Farm provides no services that are ordinarily provided by government employees.

179.   Riley engaged in expressive conduct addressing matters of public concern.

180.   Defendants, acting under color of state law, took adverse action against Plaintiffs, jointly and separately, by retaliating against Riley's constitutionally

31

Verified Complaint                                                    5:20-cv-1739

protected speech in violation of Riley's clearly established rights under the First Amendment.

181. Riley's expressive conduct was a substantial or motivating factor for the adverse action. The private views of a field trip venue owner do not motivate legitimate pedagogical concerns as a matter of law.

182. Defendants, acting under color of state law, violated Riley's clearly established rights by ratifying, endorsing and approving the above-referenced Defendants' acts in violation of Plaintiffs' clearly established rights.

183. Defendants cancelled scheduled field trips to the Farm and created a policy prohibiting future field trips. Terminating this benefit is a matter of discretion reserved to the District and its agents; however, Defendants' cannot terminate the benefit for unconstitutional, retaliatory reasons.

184. No applicable legal precedent could justify the Districts' retaliation against Plaintiffs for Riley's expression of opinions on matters of significant and widespread public concern that (1) did not reference the District, Riley's Farm, school field trips, or anything with any connection to the District; (2) was not commissioned, paid for, endorsed, approved, or otherwise associated with the District; (3) was made on Riley's own time, on his own social media accounts; and which (4) no reasonable reader of those posts could possibly interpret as representing the views of the District or the Defendants.

185. As set forth above, Plaintiffs are not policymakers, supervisors, official government spokespersons, public safety employees, primary or secondary school teachers, or any other category of person that courts have classified as "quintessentially public servants" potentially subject to heightened governmental restraints on speech that may reasonably be perceived as communicating a government agency's own views.

/ / /

Verified Complaint

5:20-cv-1739

186.   While legitimate government concerns to avoid disruption to provision of public services may, in some circumstances, outweigh the interest of an employee or public contractor in freedom of speech, the more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made. Under no applicable legal precedent could the District assert that retaliating against Riley's speech was actually necessary to avoid disruption to its ability to provide public services sufficient to justify the infringement of Plaintiffs' First Amendment rights.

187.   In acting as alleged herein, the Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiffs' clearly established and constitutionally protected rights, justifying an award of punitive damages in an amount sufficient to punish the Defendants and discourage others from engaging in similar gross abuse of the public trust and governmental power.

188.   As a direct and proximate result of Defendants' actions in furtherance of the above-referenced conspiracy, as described in this Complaint, Plaintiffs have suffered injury, including but not limited to:

a) Cancellation by District schools of field trips booked for the 2018-2019 school year;

b) Lost future revenues and/or profits due to the Districts' unlawful blacklisting of Riley's Farm lost as a direct and proximate result of the general conspiracy in which the Defendants, together with MacHott, are participants, in a sum reflecting up to the value of 50% of Riley's Farm's reasonably foreseeable total future school field trip business absent Defendants' unlawful action, in an amount subject to proof at trial but not less than $125,000 per District;

c) Reputational damage to Riley and Riley's Farm, in an amount subject to proof at trial in excess of $125,000 per District;

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

33

Verified Complaint                                                5:20-cv-1739

   d) Mental and emotional distress, mortification, anguish, and embarrassment, including the effects of anxiety over Riley's Farm's future ability to continue to provide livelihoods for its loyal longtime employees with whom Riley and Riley's Farm management have significant personal relationships, in an amount subject to proof at trial not less than $800,000 per District.

189. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, loss, and damage.

190. Plaintiffs are informed and believe and thereon allege that Defendants' policy prohibiting District schools from patronizing Riley's Farm for field trips is continuing, subject to repetition and therefore capable of evading review unless prospective equitable relief is granted.

191. By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed content- and viewpoint-based restrictions on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

192. As a direct and proximate consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the First Amendment, Plaintiffs have suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

193. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and preliminary and permanent injunctive prospective relief invalidating and restraining enforcement of the restrictions imposed on Plaintiffs' freedom of speech. As to this claim for relief, Plaintiffs seek said equitable relief

34

Verified Complaint                 5:20-cv-1739

pursuant to *Ex Parte Young,* 209 U.S. 123 (1908) against all Defendants acting in their official capacities.

194.   Additionally, Plaintiffs are entitled to their actual and nominal damages arising from Defendants' unconstitutional actions in their individual capacity while acting under color of state law, as well as reasonable costs of suit.

195.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**

**Violation of the First Amendment – Conspiracy**
**(42 U.S.C. § 1985)**

(Against All Defendants)

196.   Plaintiffs hereby incorporate by reference all above-stated paragraphs.

197.   As set forth above, Defendants and other private persons conspired and agreed together to inflict injury upon Plaintiffs by procuring and causing official governmental retaliation against them for Riley's First Amendment-protected expression on matters of public concern.

198.   Overt acts taken in furtherance of this conspiracy include, but are not limited to, (1) MacHott's successful efforts to induce one or more of the Defendants to end Riley's Farm's pre-existing commercial relationship with their school districts; and (2) Defendants' unlawful cessation of patronage of Riley's Farm for school field trips based on unconstitutional conditions.

199.   Plaintiffs are informed and believe, and on that basis allege, that Defendants have taken further overt action in furtherance of the conspiracy by contacting officials at other school districts and encouraging them to join in retaliating against Riley's Farm.

/ / /

35

Verified Complaint                                                      5:20-cv-1739

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

200.    The overt acts of the Defendants and potentially other participants in the conspiracy (which Plaintiffs may seek leave of Court to add as defendants, as may be appropriate) have resulted in damage to Plaintiffs, which continues to mount. Riley's Farm has lost a significant amount of its field trip business as of the date of the filing of this Complaint.

201.    As a direct and proximate result of Defendants' actions in furtherance of the above-referenced conspiracy, as described in this Complaint, Plaintiffs have suffered injury, including but not limited to:

a) Cancellation by District schools of field trips booked for the 2018-2019 school year;

b) Lost future revenues and/or profits due to the Districts' unlawful blacklisting of Riley's Farm lost as a direct and proximate result of the general conspiracy in which the Defendants are participants, in a sum reflecting up to the value of 50% of Riley's Farm's reasonably foreseeable total future school field trip business absent Defendants' unlawful action, in an amount subject to proof at trial but not less than $125,000 per District;

c) Reputational damage to Riley and Riley's Farm, in an amount subject to proof at trial in excess of $125,000 per District;

d) Mental and emotional distress, mortification, anguish, and embarrassment, including the effects of anxiety over Riley's Farm's future ability to continue to provide livelihoods for its loyal longtime employees with whom Riley and Riley's Farm management have significant personal relationships, in an amount subject to proof at trial not less than $800,000 per District.

202.    In acting as alleged herein, the Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiffs' clearly established and constitutionally protected rights, justifying an award of punitive

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

36

Verified Complaint                                                              5:20-cv-1739

damages in an amount sufficient to punish the Defendants and discourage others from engaging in similar gross abuse of the public trust and governmental power.

203.   As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, loss, and damage in that Plaintiffs are informed and believes and thereon alleges that Defendants' policy to prohibit District schools from patronizing Riley's Farm for field trips, as Plaintiffs are informed and believe and on that basis allege certain schoolteachers wish to continue to do, is continuing.

204.   By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed content- and viewpoint-based restrictions on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

205.   As a direct and proximate consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the First Amendment, Plaintiffs have suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

206.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and preliminary and permanent injunctive prospective relief invalidating and restraining enforcement of the restrictions imposed on Plaintiffs' freedom of speech. As to this claim for relief, Plaintiffs seek said equitable relief pursuant to *Ex Parte Young,* 209 U.S. 123 (1908) against all Defendants acting in their official capacities.

207.   Additionally, Plaintiffs are entitled to their actual and nominal damages arising from Defendants' unconstitutional actions in their individual capacity while acting under color of state law, as well as reasonable costs of suit.

Verified Complaint                                                               5:20-cv-1739

208.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Violation of the Fourteenth Amendment – Due Process
### (42 U.S.C. § 1983)

(Against All Defendants)

209.   Plaintiffs hereby incorporate by reference all above-stated paragraphs.

210.   Defendants, acting under color of state law and according to a policy, pattern and practice, cancelled scheduled field trips to the Farm and created a policy prohibiting future field trips. This policy is vague, overbroad, and improperly affords Defendants unfettered discretion in its application, and therefore deprives Plaintiffs of their clearly established due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

211.   Defendants violated Plaintiffs' due process rights by cancelling scheduled field trips to the Farm and creating a policy prohibiting future field trips.

212.   By cancelling scheduled field trips to the Farm and creating a policy prohibiting future field trips, Defendants demonstrated a reckless and callous indifference to Plaintiffs' rights.

213.   By reason of the aforementioned policy, practice, custom, acts, and omissions, engaged in under color of state law, Defendants have imposed content- and viewpoint-based restrictions on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 ship.

214.   As a direct and proximate consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. § 1983 and the First Amendment,

38

Verified Complaint                                                5:20-cv-1739

Plaintiffs have suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

215.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and preliminary and permanent injunctive prospective relief invalidating and restraining enforcement of the restrictions allowed or required by the Secular Only Vendor Policy prohibiting religious messages on Plaintiffs' website. As to this claim for relief, Plaintiffs seek said equitable relief pursuant to Ex Parte Young, 209 U.S. 123 (1908) against all Defendants acting in their official capacities.

216.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### I. Against Defendants In Their Individual Capacity

1. For judgment in favor of Plaintiffs against Defendants;

1. For compensatory damages, in an amount subject to proof at trial in excess of $5,000,000 per District;

2. For nominal damages for the past loss of Plaintiffs' constitutional rights pursuant to the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

3. For punitive damages, in an amount to be determined according to proof at trial, sufficient to punish Defendants and make an example of them for their abuse of the public trust and governmental power;

4. For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

5. For costs of suit incurred in this action; and

6. For such other and further relief as the Court deems proper.

39

Verified Complaint                                                    5:20-cv-1739

**II.    Against Defendants In Their Official Capacity**

1.  For judgment in favor of Plaintiffs and against Defendants;

2.  For a declaration that Defendants' policies of prohibiting future field trips in retaliation for Riley's Social Media Posts on matters of public concern are unconstitutional on their face;

3.  For a declaration that Defendants' policies of prohibiting future field trips in retaliation for Riley's Social Media Posts on matters of public concern are unconstitutionally overbroad on their face;

4.  For a declaration that the Defendants' policies of prohibiting future field trip in retaliation for Riley's Social Media Posts on matters of public concern are unconstitutional as applied;

5.  For a declaration that Defendants violated 42 U.S.C. § 1983;

6.  For a declaration that Defendants violated the First and Fourteenth Amendments to the United States Constitution;

7.  For preliminary and permanent injunctive relief prohibiting Defendants from enforcing their unconstitutional content- and/or viewpoint-based policies of prohibiting future field trips in retaliation for Riley's Social Media Posts on matters of public concern against Plaintiffs and those similarly situated and from unconstitutionally ratifying a heckler's veto by inhibiting Plaintiffs' First Amendment and Fourteenth Amendment rights of speech and expression and those rights belonging to third parties in the future;

8.  For preliminary and permanent injunctive relief enjoining and restraining the Defendants and their successors in office, from maintaining, enforcing or adopting any policy, custom or practice to forbid or discourage patronage of Riley's Farm by District schools or employees, for field trips or any other purpose, or of any other independent contractor with a

40

Verified Complaint                                                  5:20-cv-1739

commercial relationship with the District as of the date of the filing of this Complaint, due to private commentary by any of its owners, officials or employees, not expressed in the immediate context of field trip presentations, about matters of public concern.

9.   For preliminary and permanent injunctive relief enjoining and restraining Defendants and their successors in office, from encouraging or permitting employees or officials of the District to withdraw patronage from Riley's Farm, or any other independent contractor with a commercial relationship with the District as of the date of the filing of this Complaint, due to private commentary by any of its owners, officials or employees, not expressed in the immediate context of field trip presentations, about matters of public concern.

10.  For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

11.  For costs of suit incurred in this action; and

12.  For such other and further relief as the Court deems proper.

DATE: August 27, 2020                    Respectfully submitted,

                                         FREEDOM X


                                          *s/ William J. Becker, Jr.*
                                         Attorneys for Plaintiffs


**DEMAND FOR JURY TRIAL ON FOLLOWING PAGE**

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

41

Verified Complaint                                          5:20-cv-1739

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Riley's American Heritage Farm and James Patrick Riley demand trial by jury on all claims they bring against Defendants in this action of all issues so triable.

DATE: August 27, 2020

FREEDOM X

*s/ William J. Becker, Jr.*
Attorneys for Plaintiffs

**<u>VERIFICATION ON FOLLOWING PAGE</u>**

42

Verified Complaint                                                                                          5:20-cv-1739

## VERIFICATION

I, **JAMES PATRICK RILEY**, on my own behalf and on behalf of **RILEY'S FARM**, for which I am authorized as its principal shareholder to subscribe, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

DATE: August 27, 2020

_____

**JAMES PATRICK RILEY**, an individual, and on behalf of **RILEY'S FARM**, a corporation

43

**Verified Complaint**